# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN ANTHONY CASTRO, and** | § | |
| **CASTRO & CO., LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No. 3:18-cv-00573-N** |
| | § | |
| **ROY ANDREW BERG,** | § | |
| **ALEXANDER FAIRFAX MARINO,** | § | |
| **& MOODYS GARTNER TAX LAW, LLP,** | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

---

Andrew T. Turner
Texas Bar No. 24008968
andrew.turner@ogletreedeakins.com
Theanna Sedlock
Texas Bar No. 24089243
theanna.sedlock@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  214.987.3800
Facsimile:  214.987.3927

**COUNSEL FOR DEFENDANTS**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 2

III. LEGAL ARGUMENT ...................................................................................... 7

    A.     THIS COURT LACKS PERSONAL JURISDICTION OVER EACH DEFENDANT........................................................................................... 7

          1.    Standard of Review for Challenges to Personal Jurisdiction under Rule 12(b)(2). .................................................................. 7

          2.    The Complaint Does Not Establish That This Court Has Specific Jurisdiction Over Defendants..................................... 8

          3.    Defendants Lack Sufficient Systematic and Continuous Contacts with Texas to Confer General Jurisdiction. ................. 9

    B.     ADDITIONALLY AND/OR ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFFS' LAWSUIT FOR IMPROPER VENUE....................... 10

    C.     PLAINTIFFS LACK STANDING TO ASSERT THEIR PRESENT CLAIMS. 11

    D.     THE COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.................... 14

          1.    Plaintiffs' Tortious Interference Claims Are Factually Insufficient. ........... 15

          2.    Castro's Claim for Defamation Fails to State a Claim upon Which Relief May Be Granted. ................................................ 17

          3.    Castro & Co.'s Claim for Business Disparagement Fails to State a Claim upon Which Relief May Be Granted. ..................... 21

IV. CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, CIV.A.3:05-CV-1307-G, 2005 WL 2989307 (N.D. Tex. Nov. 7, 2005) ................................................................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 14, 15, 16, 20

*Barrow v. Sutton*, Civil Action No. H-14-200, 2014 WL 12586346 (S.D. Tex. July 16, 2014) .. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...................................................... 14, 15, 20

*Bender v. Williamsport Area School District*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ........................................................................................................ 11

*Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002) ................................................................ 17

*BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 198 L. Ed. 2d 36 (2017) .................................... 9

*Bonvillain v. Louisiana Land & Exploration Co.*, 702 F.Supp.2d 667 (E.D. La. Mar. 29, 2010) .. 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................................... 7, 8

*Chair King, Inc. v. Houston Cellular Corporation*, 131 F.3d 507 (5th Cir.1997) ................ 11

*Croft v. Governor of Texas*, 562 F.3d 735 (5th Cir.2009) .................................................. 11

*Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) .............. 9

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) ........ 11

*Falcoal Inc. v. Turkiye Komur Isletmeleri Kurumu*, 660 F. Supp. 1536 (S.D. Tex. 1987) ........ 10

*Fawcett v. Rogers*, 492 S.W.3d 18 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ................ 20

*Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) ........................ 21

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) .................. 17

*Granada Biosciences, Inc. v. Barrett*, 958 S.W.2d 215, 222 (Tex. App.—Amarillo 1997, pet. denied) ........................................................................................................................ 21

*Guardian Life Ins. Co. v. Kinder*, 663 F.Supp.2d 544 (S.D. Tex. 2009) .............................. 15

*Hancock v. Variyam*, 400 S.W.3d 59 (Tex. 2013) ........................................................ 17, 21

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .......................... 7, 8, 9

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995) ............................................................ 15

*Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987) .................................... 21

*Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945) .................................................................. 7

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016) .. 7

*Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602 (5th Cir. 2008) ................................ 7

*Little v. KPMG LLP*, 575 F.3d 533 (5th Cir. 2009) ................................................ 11, 12, 13

*Lonestar Livestock Equip. Co. Inc. v. Southern Livestock Sys.*, LLC, No. H:15–CV-447, 2015 WL 3756501 (S.D. Tex. Jun. 16, 2015) .............................................................. 7, 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). 11, 12, 13

*Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ............ 11

*Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) .............................................. 10

*Palestine Herald–Press Co. v. Zimmer*, 257 S.W.3d 504 (Tex.App.—Tyler 2008, pet. denied). 17

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) ............ 8

*Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598 (S.D. Tex. 2010) ............ 15

*Salinas v. Salinas*, 365 S.W.3d 318 (Tex.2012) (per curiam) .............................................. 17

*Spain v. Eagleburger Law Grp.*, No. 04-cv-01817-WDM PAC, 2006 WL 650191 (D. Colo. Mar. 9, 2006) ........................................................................................................ 10

*Sperry v. Florida*, 373 U.S. 379 (1963) ............................................................................ 18

*Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680

(N.D. Tex. 2008) ..................................................................................................... 17
*Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80 (Tex. 2003) .................................... 12
*Vice v. Kasprzak*, 318 S.W.3d 1 (Tex.App.–Houston [1st Dist.] 2009, pet. denied) ................... 17
*Walden v. Fiore*, 134 S.Ct. 1115 (2014). ..................................................................... 8
*Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142 (Tex.2014). 17, 21
*WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568 (Tex.1998) ................................... 17, 19
*Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994) ............................................................... 7
*Worldwide Asset Purchasing, L.L.C. v. Rent-a-Center East, Inc.*, 290 S.W.3d 554
    (Tex. App.-Dallas 2009, no pet.) ............................................................................ 12

**Statutes**

28 U.S.C. § 1391 ............................................................................................... 10, 11

**Other Authorities**

Dixon Advisory USA, https://www.dixonadvisoryusa.com/ (last visited Jun. 13, 2018) ............. 5
Internal Revenue Service, "Enrolled Agent Information," *available at* https://www.irs.gov/tax-
    professionals/enrolled-agents/enrolled-agent-information (last visited June 11, 2018) ....... 3, 18

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................... 6, 14
Fed. R. Civ. Pro 8(a)(2) .......................................................................................... 14
Tex. Civ. Prac. & Rem. Code § 73.005 .................................................................... 17
Tex. Civ. Prac. & Rem. Code §§ 17.041-045 ............................................................. 7
Tex. Gov't. Code § 81.101 ..................................................................................... 18
Tex. Gov't. Code § 81.102 ..................................................................................... 18
Tex. Penal Code § 38.122 ...................................................................................... 19

**Constitutional Provisions**

Tex. Const. art. I § 8 ............................................................................................. 20
U.S. Const. am. 1 ................................................................................................... 20

Defendants Roy Andrew Berg ("**Berg**"), Alexander Fairfax Marino ("**Marino**"), and Moodys Gartner Tax Law, LLP ("**Moodys**") (collectively, "**Defendants**") hereby move the Court to dismiss the First Amended Complaint (the "**Complaint**") filed by Plaintiffs John Anthony Castro ("**Castro**") and Castro & Co., LLC ("**Castro & Co.**") (together, "**Plaintiffs**") under Federal Rule of Civil Procedure, Rule 12(b)(1), (2), (3), and (6).

## I.    <u>INTRODUCTION</u>

On March 12, 2018, Plaintiffs John Anthony Castro filed his Original Complaint against Defendants, alleging defamation and tortious interference with existing contractual relations. Defendants filed a Motion to Dismiss the Original Complaint on June 14, 2018.  Castro did not file a response to Defendants' motion by the July 5, 2018 deadline.  However, after being contacted by the Court, Castro's counsel indicated that he did intend to respond to Defendants' Motion to Dismiss, to which the Court Clerk indicated Castro would need to file a motion for leave to file a late response.  Without conferring with Defendants' counsel, Castro then filed his Opposed Motion for Leave to File First Amended Complaint on July 17, 2018.[1]  Given that the deadline to file amended pleadings has not yet expired—or even been set—Defendants filed their Notice of Non-Opposition to Plaintiffs' Motion for Leave to Amend on August 1, 2018.  Castro then filed his first Amended Complaint one week later, on August 8, 2018, adding Castro & Co., LLC as an additional Plaintiff to the instant action.

Despite being in possession of Defendants' Motion to Dismiss for nearly two months, Plaintiffs have failed to remedy virtually all of the errors and omissions which entitle Defendants to dismissal of all of Plaintiffs' claims as a matter of law.  Plaintiffs' claims all stem from various alleged email communications purportedly "sent or caused to be sent" by Defendants Berg and Marino to various unspecified recipients, as well as all three Defendants' allegedly "publish[ing] and disseminat[ing] statements of fact to media outlets and [speaking] at conferences...."[2]  The Complaint alleges that this Court has personal jurisdiction over Defendants because Defendants

---

[1] Defendants note that Plaintiffs' counsel did confer regarding extending Plaintiff's deadline to respond to Defendant's Motion to Dismiss Plaintiff's Original Complaint, to which Defendants were opposed.

[2] Complaint ¶¶ 15, 16, 26, and 34.

Berg and Marino are employees of Defendant Moodys, and Moodys "aggressively target[s] and market[s] tax payers in Texas… through its highly interactive website, [where Moodys] promotes and sells its tax services directly to the public at large, including residents of the State of Texas."[3] Plaintiffs' claims are deficient for a number of reasons.  This Court lacks personal jurisdiction over all three Defendants, venue is improper in the Northern District of Texas, Plaintiffs' damages are too speculative to confer standing to sue for defamation, business disparagement, or tortious interference with contractual relations, and Plaintiffs' claims all fail for a lack of proper pleading. The Court should dismiss Plaintiffs' claims for the reasons set forth below.

## II.    FACTUAL BACKGROUND[4]

1.      The Complaint states that Plaintiff Castro is an individual whose "office address" is in Washington, D.C.[5]

2.      The Complaint alleges that Plaintiff Castro & Co. is a Wyoming Limited Liability Company whose principal business address is 13155 Noel Road in Dallas, Texas.[6]  However, every page of Castro & Co.'s website lists its office address as 1701 Pennsylvania Ave NW in Washington, DC.[7]

3.      With respect to the individual Defendants (both of whom are employees of Defendant Moodys), the Complaint alleges that Defendant Berg resides in Greenacres, Washington, and Defendant Marino resides in Waxhaw, North Carolina.[8]  However, the individual Defendants are now, and have been for several years, Canadian residents.[9]

---

[3] Complaint ¶ 8.

[4] For the purpose of this motion only, and unless otherwise noted, Defendants accept as true the allegations in the Complaint.  Defendants will vigorously dispute Plaintiffs' allegations should this matter proceed.

[5] Complaint ¶ 1.

[6] Complaint ¶ 2.

[7] *See generally* https://www.castroandco.com/.

[8] Complaint ¶¶ 3-4.

[9] App. ¶¶ 1, 3.

4.      The Complaint alleges that Defendant Moodys's principal place of business is located in Calgary, Alberta, Canada.[10]

5.      Castro claims in the First Amended Complaint that he received a Master of Laws (L.L.M.) and a Juris Doctorate degree, though he does not claim to be licensed with any state bar in the United States.[11]  Indeed, Castro admitted in the Original Complaint that he was not admitted to any state bar.[12]

6.      Castro also alleges in the Complaint that he is licensed as an Enrolled Agent with the United States Treasury.[13]  "Enrolled agent" is a credential issued by the Internal Revenue System ("**IRS**") which permits an individual to represent taxpayers before the IRS; this credential can be obtained by either passing an IRS proficiency exam or through experience as a former IRS employee.[14]  Enrolled agents are not required to have a college degree or any other specific legal or tax-related education.[15]

7.      Castro admits that he "holds himself out to the public as an 'International Tax Attorney.'"[16]

8.      The Complaint alleges that on or about September 14, 2017, "Defendants Berg and Mario sent or caused to be sent, directly or indirectly" an email claiming that Plaintiffs "is 'not a lawyer' and that there is 'potential adverse impact' if anyone relies on his legal advice."[17]  The Complaint is completely lacking any information regarding: who this email was, in fact, sent by; who the recipient(s) of such email was or were; where the sender and recipient(s) were located; or the substance of the email, beyond the two purported three-word quotes.

---

[10] Complaint ¶ 8.

[11] Complaint ¶¶ 10, 12.

[12] *See* Plaintiff's Original Complaint [Docket No. 1].

[13] Complaint ¶ 11.

[14] Internal Revenue Service, "Enrolled Agent Information," *available at* https://www.irs.gov/tax-professionals/enrolled-agents/enrolled-agent-information (last visited June 11, 2018).

[15] *See id.*

[16] Complaint ¶ 11.

[17] Complaint ¶ 15.

9.     The Complaint also alleges that on March 5, 2018, Defendant Berg sent an email from his Moodys's work email account purportedly stating that "'Mr. Castro is not licensed to practice law' and that 'any opinion he may give on any matter of tax law must take this fact into consideration.'"[18]   However, the Complaint fails to indicate to whom this alleged email was sent or where the recipient was located.

10.     Plaintiffs claim in the Complaint that the three Defendants collectively "have published and disseminated defamatory statements of fact to media outlets and [have] spoken at conferences in efforts to destroy the reputation and business relationships of Plaintiffs Castro and Castro & Co, LLC."[19]   There is absolutely no indication in the Complaint regarding: the alleged dates of these communications; the identities of the alleged "media outlets," conference attendees, or other participants to the communications; or the location(s) of the participants.   Moreover, Plaintiffs claims that "in furtherance of such [aforementioned efforts], Defendants have *intimated* that Castro is a fraud, Castro has no legal ability to be filing tax returns, and that Castro is engaged in unethical and illegal activity."[20]   What each Defendant is alleged to have actually *said* (as opposed to what Plaintiffs interpret each to have "intimated") to these undisclosed recipients is entirely unknown, nor does the Complaint provide any indication what "fraud" or other "illegal activity" Defendants have each allegedly accused Castro of committing.

11.     Regarding the aforementioned purported email efforts, the Complaint states that such were "'anonymous' emails" sent to "top business clients of Plaintiff Castro."[21]   The Complaint is completely bereft of any factual allegations regarding the basis for Plaintiffs' belief that an admittedly anonymous email was generated by all three Defendants (or any one of them), the alleged date(s) of these emails, and any practical information by which the alleged recipients of these emails can be identified.

---

[18] Complaint ¶ 20.

[19] Complaint ¶ 17; *accord* Complaint ¶¶ 26, 27.

[20] Complaint ¶¶ 17, 26-29 (emphasis added).

[21] Complaint ¶ 29.

12.     Plaintiffs claim that Castro & Co. L.L.C. "entered into a contract with Alan Dixon and Dixon Advisory for various tax related services and for ongoing tax advice."[22]   Plaintiffs further claim that "many employees of Dixon Advisory also contract with Plaintiff Castro & Co. separately…," although the specific individual clients are not identified in the Complaint.[23]

13.     The Complaint alleges that Dixon Advisory is a "wealth management and advisory firm based in Australia" that has one U.S.-based branch, although the location of the U.S. branch cannot be ascertained from the Complaint.[24]   According to its website, Dixon Advisory's U.S. branch is located in New York, New York.[25]

14.     Plaintiffs claim that "Castro & Co. and Dixon Advisory have both been transparent in disseminating information establishing a relationship between the parties."[26]   However, there are absolutely no other details provided in the Complaint regarding how such information was "disseminated," by whom, to whom such information was provided, when such communications occurred, where the parties to the communications were located, or what exactly was communicated.

15.     The Complaint further alleges that "Defendants sent electronic messages to principals in the Dixon Advisory organization defaming Plaintiff Castro and his firm Plaintiff Castro & Co."[27]   Once again, the Complaint lacks any details regarding when these communications were purportedly sent, which communications were purportedly sent by which Defendant(s), the identity of the alleged "principals," or where such individuals were located at the time of the alleged communications.  Furthermore, there are no details provided regarding what the Defendants are accused of having actually said in these electronic messages, aside from Plaintiffs' conclusory allegation that such statements were defamatory.[28]

---

[22] Complaint ¶ 18.

[23] Complaint ¶ 18.

[24] Complaint ¶ 19.

[25] *See* Dixon Advisory USA, https://www.dixonadvisoryusa.com/ (last visited Jun. 13, 2018).

[26] Complaint ¶ 19.

[27] Complaint ¶ 20.

[28] *Id.*

---

16.     The Complaint alleges that Defendants, through their alleged defamatory statements, caused damages to Plaintiffs consisting of "reputational and financial harm… with respect to current clients and potential future clients through referrals."[29]  However, nowhere in the Complaint do Plaintiffs claim that these unspecified "current clients" cancelled their contract(s) or reduced their business with either Castro & Co. or Plaintiff Castro individually, as a result of Defendants' alleged actions or otherwise.  Furthermore, Plaintiffs do not provide any information whatsoever regarding the "potential future clients" or the prospective business relationships that were allegedly prevented by Defendants' supposed actions.[30]

17.     Castro is seeking $1 million in damages as a result of Defendants' alleged defamation.[31]  Castro & Co. claims that it has incurred $1 million in damages as a result of Defendants' alleged tortious interference with its existing contracts with Alan Dixon and Dixon Advisory, consisting of "reputational and financial harm with respect to current clients and potential future clients through referrals."[32] Castro & Co. additionally asserts a claim for $246,750,000.00 for the damage to Castro & Co.'s reputation and business prospects among Australian Nationals."[33] Although Plaintiffs' First Amended Complaint does not identify how such amount was determined, Castro stated in his Original Complaint that the same figure was calculated by assuming he (or, now, Castro & Co.) would otherwise have secured an engagement fee from both: (a) 100 percent of all individuals to whom E-3 Visas are issued; and (b) some estimated portion of all dual U.S.-Australian citizens in the world.[34]

---

[29] Complaint ¶ 21.

[30] *Id.*

[31] Complaint ¶ 44.

[32] Complaint ¶¶ 35, 45. *Accord* Complaint ¶ 40 (alleging that Castro & Co. suffered "lost profits [and] loss of its reputation and goodwill under the contract and partnership with Dixon Advisory and in the communities in which it operates in the amount of $1,000,000.00").

[33] Complaint ¶ 43.

[34] Plaintiff's Original Complaint ¶ 40.

## III.   <u>LEGAL ARGUMENT</u>

## A.   **THIS COURT LACKS PERSONAL JURISDICTION OVER EACH DEFENDANT.**

According to Plaintiffs' allegations in the Complaint, none of the Defendants are residents of Texas.[35]  Here, Plaintiffs cannot establish general or specific jurisdiction over these nonresident defendants, therefore this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

### 1.   **Standard of Review for Challenges to Personal Jurisdiction under Rule 12(b)(2).**

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.[36]  In Texas, this two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process.[37]  Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."[38]

Plaintiffs have the burden of establishing that this Court has jurisdiction over each Defendant.[39]  To meet this burden, Plaintiffs cannot simply rest on the bare allegations of the

---

[35] Complaint ¶¶ 3-5.

[36] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016).

[37] *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)); *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.041-045.

[38] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).  *Accord Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945) (holding that, for due process to be satisfied, a defendant must have sufficient minimum contacts with the forum state).

[39] *Lonestar Livestock Equip. Co. Inc. v. Southern Livestock Sys., LLC*, No. H:15–CV-447, 2015 WL 3756501, at *2 (S.D. Tex. Jun. 16, 2015) (holding that "[w]hen a district court rules on personal jurisdiction without an evidentiary hearing, the Plaintiffs must make a prima facie showing of jurisdiction, and the court may consider the entire contents of the record, including affidavits") (citing *Johnston*, 523 F.3d at 609).

Complaint, but rather are obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.[40]   However, "the court is not required to credit… allegations controverted by opposing affidavits."[41]   Here, Plaintiffs cannot meet their burden to establish personal jurisdiction.

> **2.**     **The Complaint Does Not Establish That This Court Has Specific Jurisdiction Over Defendants.**

"Minimum contacts" for jurisdictional purposes can be established through the assertion of either general or specific jurisdiction.[42]   Specific jurisdiction refers to a suit "arising out of or related to the defendant's contacts with the forum."[43]   When analyzing specific jurisdiction, the court's focus is only on the defendant's contacts with the forum state specific to the cause of action, not the Plaintiffs' contacts or contacts unrelated to the cause of action.[44]   "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."[45]

Here, the Complaint does not contain a single factual allegation that Defendants' purported conduct occurred in Texas, much less any factual allegation that such conduct gave rise to Plaintiffs' present claims.   Regarding Plaintiffs' defamation claims, there are no allegations that Defendants' supposed defamatory communications were sent from or received in Texas.[46]   Defendants are additionally accused of interfering with Castro & Co.'s contract with Alan Dixon

---

[40] *See id.* at *4 (noting that "the court is not required to credit conclusory allegations…. [T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted") (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).  *Accord Bonvillain v. Louisiana Land & Exploration Co.*, 702 F.Supp.2d 667, 682 (E.D. La. Mar. 29, 2010) ("Plaintiffs cannot meet this burden merely by making conclusory allegations or farfetched inferences.").

[41] *Lonestar Livestock*, 2015 WL 3756501, at *2.

[42] *Panda Brandywine Corp.*, 253 F.3d at 867.

[43] *Helicopteros*, 466 U.S. at 414 n.8.

[44] *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014).

[45] *Walden v. Fiore*, 571 U.S. at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted)).

[46] *See* Complaint ¶¶ 15, 16, 17, 20 (no allegations that the purported communications were sent from or received by anyone in Texas).

and Dixon Advisory by "[sending] electronic messages to principals in the Dixon Advisory organization," which Plaintiffs admit are based in Australia.[47]

Because the Complaint is entirely devoid of factual allegations that Defendants had contact with Texas which gave rise to the current suit, Plaintiffs cannot establish that this Court has specific jurisdiction over Defendants.

### 3. Defendants Lack Sufficient Systematic and Continuous Contacts with Texas to Confer General Jurisdiction.

Unlike specific jurisdiction, general jurisdiction refers to a suit which does not arise from the nonresident's contacts with the forum, and is asserted only over defendants whose "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[48]  Once more, the Complaint utterly fails to establish personal jurisdiction in this regard.

The Complaint does not contain any factual allegations that Defendants have maintained the "continuous and systematic" contacts that would be required to assert personal jurisdiction over them in Texas.  Specifically, Plaintiffs allege that Moodys "aggressively target[s] and market[s] tax payers in Texas."[49]  However, because this allegation is directly contradicted by the affidavits attached hereto, the Court is not required to accept such allegation as true.[50]  Moreover, even if granted an opportunity to further amend the Complaint, Plaintiffs would nevertheless be unable to produce facts supporting the exercise of personal jurisdiction over Defendants.  None of the Defendants own, use, or possess real property in Texas.[51]  Moodys has its principal place of business in Alberta, Canada, as Plaintiffs have acknowledged, and it does not transact business, supply goods or services, or manage or employ any individuals in Texas.[52]  None of the partner

---

[47] Complaint ¶¶ 19-20.

[48] *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1552, 198 L. Ed. 2d 36 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014)).  *Accord Helicopteros*, 466 U.S. at 415.

[49] Complaint ¶ 8.

[50] *See* App. ¶¶ 2, 3; *see also Lonestar Livestock*, 2015 WL 3756501, at *2 (holding that "the court is not required to credit… allegations controverted by opposing affidavits.").

[51] App. ¶¶ 2, 3.

[52] Complaint ¶ 8.  *Accord* App. ¶¶ 1-2.

owners of Moodys resides in Texas.[53]   Defendants Berg and Marino have not visited Texas in nearly 20 years other than to stop at airports during flight layovers.[54]   As such, none of the Defendants could reasonably be perceived to be "essentially at home" in Texas.[55]   Contrary to Plaintiffs' allegations, Moodys' maintenance of a website accessible to Texas consumers does not support the exercise of personal jurisdiction over Moodys, Berg, or Marino.[56]

Simply stated, the Complaint lacks any factual allegation whatsoever that any of the Defendants have sufficient contact with Texas, nor could the Complaint be truthfully amended to include facts that would support a court in Texas exercising personal jurisdiction over Defendants. Rather, the Complaint reveals itself to be no more than a blatant attempt at forum shopping by Plaintiffs.   Accordingly, the Complaint should be dismissed pursuant to Rule 12(b)(2).

## B.   ADDITIONALLY AND/OR ALTERNATIVELY, THIS COURT SHOULD DISMISS PLAINTIFFS' LAWSUIT FOR IMPROPER VENUE.

Plaintiffs claims that venue is proper in the Northern District of Texas "pursuant to 28 U.S.C. § 1391(c)(3)  because Defendants are not residents in the United States."[57] However, subsection 1391(c) only establishes residency for venue purposes; a civil action must nevertheless be brought in a proper venue under § 1391(b).   Assuming *arguendo* that Plaintiffs meant to support their choice of venue pursuant to 28 U.S.C. § 1391(b), venue is improper in this Court under such subsection.

Under § 1391(b)(1), venue would be proper in the Northern District of Texas if both (i) all Defendants reside in Texas, and (ii) at least one Defendant resides in the Northern District.[58] Pursuant to § 1391(b)(2), a civil action may also be brought in a judicial district in which all or a

---

[53] App. ¶ 1.

[54] App. ¶¶ 1, 3.

[55] *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. at 1552.

[56] Complaint ¶ 8; *see Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (holding that, where there is no evidence that defendant conducted business over the internet by engaging in business transactions with forum residents or by entering into contracts over the internet, defendant's website is insufficient to subject it to personal jurisdiction).

[57] Complaint ¶ 9.

[58] 28 U.S.C. § 1391(b)(1).

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.[59]   The "substantial property" clause of subsection (b)(2) is inapplicable here, as it establishes venue only for "suits involving property disputes or in rem actions."[60]   Subsection 1391(b)(3) provides that, if there is no district in which an action may be brought pursuant to subsections 1391(b)(1) or (2), venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction.[61]

Venue is not proper under any subsection of Section 1391.  None of the Defendants are residents of Texas or the Northern District, therefore venue is not proper under § 1391(b)(1).  The Complaint makes no allegation that all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Texas; indeed, not a single factual allegation in the Complaint even references Texas or the Northern District.  Finally, as discussed *supra*, this Court does not have personal jurisdiction over any of the Defendants, therefore venue is not proper here under subsection 1391(b)(3).

Because venue for this suit is not proper in the Northern District of Texas, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

## C.   PLAINTIFFS LACK STANDING TO ASSERT THEIR PRESENT CLAIMS.

"[W]hen a Plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action, pursuant to Rule 12(b)(1), for want of subject matter jurisdiction."[62]   The "constitutional minimum" requirement of standing contains three elements: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will

---

[59] *Id.* at § 1391.

[60] *See Barrow v. Sutton*, Civil Action No. H-14-200, 2014 WL 12586346, at *3 (S.D. Tex. July 16, 2014) (quoting *Falcoal Inc. v. Turkiye Komur Isletmeleri Kurumu*, 660 F. Supp. 1536, 1543 (S.D. Tex. 1987); *see also Spain v. Eagleburger Law Grp.*, No. 04-cv-01817-WDM PAC, 2006 WL 650191, at *3 (D. Colo. Mar. 9, 2006) (collecting cases).

[61] 28 U.S.C. § 1391.

[62] *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, CIV.A.3:05-CV-1307-G, 2005 WL 2989307, at *2 (N.D. Tex. Nov. 7, 2005) (citing *Chair King, Inc. v. Houston Cellular Corporation*, 131 F.3d 507, 509 (5th Cir.1997); *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)).

redress the injury."[63] "The party invoking federal jurisdiction bears the burden of establishing these elements."[64]   Allegations of injury are liberally construed at the pleading stage;[65] however, allegations of injury that are merely conjectural or hypothetical do not suffice to confer standing.[66] "A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court."[67]

As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has as its first element the requirement that Plaintiffs must have suffered an "injury in fact"—i.e., an invasion of a legally protected interest which is both (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"[68]   Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly… trace[able] to the challenged action of the defendant[s], and not ... th[e] result [of] the independent action of some third party not before the court."[69]   Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[70]   The allegations in the Complaint are insufficient to show that Plaintiffs have satisfied the requirements for standing to pursue either their claims for defamation/business disparagement or for tortious interference.

Plaintiffs allege in the Complaint three distinct injuries for which they are seeking redress. First, Plaintiffs are claiming $246,750,000.00 for damages "based on the number of issued E-3 Visas and a conservatively estimated number of dual U.S.-Australian citizens multiplied by an

---

[63] *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (quoting *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir.2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

[64] *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

[65] *See id.* ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim' [of standing]") (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

[66] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344–46, 350, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006).

[67] *Little v. KPMG*, 575 F.3d at 540.

[68] 504 U.S. at 560.

[69] *Id.*

[70] *Id.* at 561.

---

average engagement fee."[71]  In other words, Plaintiffs claim that, except for Defendants' alleged statements in two emails that Plaintiff Castro is "not a lawyer" and is "not licensed to practice law," every person to whom an E-3 Visa is issued, plus some increased portion of dual U.S.-Australian citizens worldwide, would have sought out and secured Castro & Co.'s services and would have paid an "average engagement fee" for such services.[72]  Not only are these allegations preposterous on their face, they are each the quintessential example of conjectural and hypothetical damages that are by no means the type of particularized, concrete injury sufficient to grant Plaintiffs standing to sue.  Moreover, Castro seeks an award of $1 million "for the damage to Castro's personal and business reputation" as a result of Defendants' alleged defamation of Castro,[73] and Castro & Co. seeks $1 million in damages based on lost profits "under the contract and partnership with Dixon Advisory and in the communities in which [Castro & Co.] operates."[74]  Plaintiffs' claim for lost potential profits is also, by its very definition, conjectural and hypothetical.  Plaintiffs do not claim that Dixon Advisory or any other current client has terminated any contract with either Castro or Castro & Co.; rather, Plaintiffs claim that Defendants' actions caused "reputational and financial harm to Plaintiffs with respect to current clients and potential future clients through referrals."[75]  Essentially, Plaintiffs are claiming damages based on the unsubstantiated allegation that Defendants' purported comments may make Plaintiffs' current clients less likely to refer future clients to both Castro and Castro & Co.  This claim is undeniably hypothetical and pure conjecture on Plaintiffs' part.  Moreover, each category of Plaintiffs' alleged

---

[71] Plaintiff's Original Complaint ¶ 40; *accord* Complaint ¶ 43 (requesting $246,750,000 "for the damage to Castro & Co.'s reputation and business prospects among Australian Nationals").

[72] *See generally* Complaint (wherein the only specific allegations regarding what defamatory statements Defendants are accused of having made are that Castro, who is not licensed to practice law by any court of law or by any state bar in the United States, is "not a lawyer" and is "not licensed to practice law").

[73] Complaint ¶ 44.

[74] Complaint ¶¶ 40.  Defendants note that attorneys' fees, asserted in Complaint ¶ 42, are not recoverable in an action for tortious interference with contract under Texas law, nor are they recoverable as damages in and of themselves; therefore, Plaintiffs' attorneys' fees cannot be considered as a part of Plaintiffs' recoverable damages. *See Worldwide Asset Purchasing, L.L.C. v. Rent-a-Center East, Inc.*, 290 S.W.3d 554, 570 (Tex. App.-Dallas 2009, no pet.); *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003).

[75] Complaint ¶ 21.

injuries "depends on the decisions of third parties not before the court," making each claim for damages "too conjectural or hypothetical to confer standing" as a matter of law.[76]

The Complaint also fails to establish a causal connection between the alleged injuries and Defendants' alleged conduct.  There are no factual allegations from which Plaintiffs' alleged injuries can be traced to any challenged action by Defendants, rather than being the result of the independent action of third parties not presently before the Court.[77]  A vast majority of individuals who receive an E-3 Visa or who are dual citizens may not be familiar with Plaintiffs or their services, may not require Plaintiffs' services, may prefer the services offered by a certified Tax Accountant or a Tax Attorney who is actually licensed to practice in a court of law, may be aware of other information in the public record which might dissuade a potential client from retaining Plaintiffs for tax services, or any other number of reasons completely independent of Defendants' alleged conduct.  There is simply no basis to conclude from the Complaint (or from common sense) that these individuals are aware of Defendants' purported statements regarding Plaintiff Castro and have chosen not to retain Plaintiffs and pay their average engagement fee based on those statements.

Because Plaintiffs have not shown an injury-in-fact or a causal connection between Defendants' alleged actions and their purported injuries, Plaintiffs do not have standing to sue for either defamation/business disparagement or tortious interference claims.  Accordingly, the Complaint should be dismissed pursuant to Rule 12(b)(1).

## D.  THE COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and raise a plaintiff's right to relief above the speculative level.[78]  "A claim

---

[76] *Little v. KPMG*, 575 F.3d at 540.

[77] *Lujan*, 504 U.S. at 561.

[78] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[79]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer *possibility* that a defendant has acted unlawfully."[80]   A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[81]  Conclusory allegations of law, inferences unsupported by facts, or a formulaic recitation of the elements of a cause of action are not sufficient to defeat a motion to dismiss pursuant to Rule 12(b)(6).[82]

In *Iqbal*, the Court also restated the two working principles it previously declared in *Twombly*:  (1) a court is not to accept as true allegations that are simply recitals of a cause of action's elements when supported only by conclusory statements; and (2) determining whether a complaint states a cause of action is context-specific and requires the court to employ its experience and common sense.[83]   Allegations that merely state legal conclusions must be supported by factual allegations or they are to be disregarded, and the Court is "not bound to accept as true a legal conclusion couched as a factual conclusion."[84]

### 1.    Plaintiffs' Tortious Interference Claims Are Factually Insufficient.

Castro & Co.'s claim against Defendants for tortious interference should be dismissed pursuant to Rule 12(b)(6) because it is supported only by Plaintiffs' conclusory allegations unsupported by any actual, specific facts.  Where a complaint, such as the one at issue, pleads insufficient factual content from which a court could draw the reasonable inference that the defendant is liable for the misconduct alleged, the plaintiff has failed to state a claim showing that he is entitled to relief.[85]

---

[79] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[80] *Id.* (quoting *Twombly*, 550 U.S. at 556) (emphasis added).

[81] *Id.* (quoting *Twombly*, 550 U.S. at 557.)

[82] *See id.*; *Twombly*, 550 US at 555; FED. R. CIV. P. 12(b)(6).

[83] *Iqbal*, 556 U.S. at 678-79.

[84] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[85] *Id*.

In Texas, to prove a tortious interference with existing contract claim, the Plaintiffs must show: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with a contract, (3) that proximately caused the Plaintiffs' injury, and (4) caused actual damages or loss.[86]   Plaintiffs have the burden of proving each element of the claim.[87]

Here, the Complaint fails to set forth sufficient factual allegations to support a claim for tortious interference.   Plaintiffs' allegation that each Defendant "willfully and intentionally interfered with the existing contract between Castro & Co." and Dixon Advisory is supported only by the conclusory allegation that "Defendants sent electronic messages to principals in the Dixon Advisory organization defaming Castro and Plaintiff Castro & Co."[88]   There are no facts provided to support Plaintiffs' conclusion that Defendants' alleged statements, whatever they may have allegedly been, were in fact defamatory.   Plaintiffs also claims that Defendants interfered with Plaintiffs' contractual relations by "sending 'anonymous' emails to top clients of Plaintiff Castro" which "intimated that Castro is a fraud, Castro has no legal ability to be filing tax returns, and that Castro is engaged in unethical and illegal activity."[89]   Such an allegation, without any factual support, provides no more than a sheer possibility that Defendants acted unlawfully.[90]   Plaintiffs' allegation that the collective Defendants "intimated" certain things—without providing any facts regarding what each Defendant is accused of *actually stating*—to some unidentified individual(s) at some undefined date(s) is insufficient to withstand a Rule 12(b)(6) motion to dismiss.   Moreover, every statement or "intimation" that Defendants are alleged to have committed relates only to Plaintiff Castro; there are no factual allegations anywhere in the Complaint regarding statements that one or more Defendant purportedly made about Castro & Co.   Furthermore, the Complaint offers no allegations regarding the actual damages or loss Plaintiffs have suffered, nor are there

---

[86] *Guardian Life Ins. Co. v. Kinder*, 663 F.Supp.2d 544, 557 (S.D. Tex. 2009) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 769 (Tex. 1995)).

[87] *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 674 (S.D. Tex. 2010).

[88] Complaint ¶ 34.

[89] Complaint ¶¶ 17, 26-29.

[90] *See Iqbal*, 556 U.S. at 678.

any allegations to support a causal link between Defendants' alleged electronic messages to Dixon Advisory or Plaintiffs' "top clients" and any personal damages suffered by Plaintiffs.

The allegations in the Complaint are insufficient to raise Plaintiffs' right to relief above the speculative level.  Because Plaintiffs have failed to plead enough facts to state a claim to relief that is plausible on its face, the Complaint should be dismissed pursuant to Rule 12(b)(6).

### 2. Castro's Claim for Defamation Fails to State a Claim upon Which Relief May Be Granted.

Castro's claim for defamation fails to state a cognizable claim for relief under Texas law. The allegations which do contain some factual allegations do not constitute defamation under Texas law, and the remaining allegations are bereft of factual details sufficient to withstand a motion to dismiss under Rule 12(b)(6).  Castro's defamation claim should therefore be dismissed.

The elements for a defamation cause of action include: (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with negligence, where the plaintiff is a private individual, and (4) damages, unless the defamatory statements are defamatory per se.[91]  Defamation per se refers to statements that are so obviously harmful that general damages may be presumed, although Texas law does not "presume any particular amount of damages beyond nominal damages."[92]  To be defamatory, statements must be verifiable statements of fact as opposed to expressions of opinion.[93]  Statements regarding possibilities or opinions are not actionable "false statements of fact."[94]  The use of a term that is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder" constitutes a protected expression of opinion, rather than an actionable statement of

---

[91] *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *see also Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 n.7 (Tex.2014).

[92] *Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013); *Salinas v. Salinas*, 365 S.W.3d 318, 320 (Tex. 2012) (per curiam).

[93] *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680, 687 (N.D. Tex. 2008) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 583 (Tex. 2003)).

[94] *Vice v. Kasprzak*, 318 S.W.3d 1, 18 (Tex.App.–Houston [1st Dist.] 2009, pet. denied); *accord Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) (holding that "[u]nder the First Amendment there is no such thing as a false idea").

fact.[95]  Whether a publication is an actionable statement of fact is a question of law.[96]  Furthermore, Texas law provides that truth is an absolute defense to defamation claims.[97]

Even taking as true all of the factual allegations in the Complaint, Castro fails to state an actionable claim for defamation.  The underlying "falsehood" in a majority of Defendants' allegedly defamatory conduct involves statements to the effect that Castro is not an attorney.[98] Castro admits that he "holds himself out to the public as an 'International Tax Attorney'"[99] despite his admission that he is not licensed with any state bar in the United States.[100]  Castro claims that he is "authorized to practice *tax law* in all 50 states and the 68 countries with which the United States has an income, gift, and/or estate tax treaty" based on being credentialed by the IRS as an "Enrolled Agent."[101]     However, the Enrolled Agent credential does not impose any specific educational requirements or require any particular legal background; although it entitles Castro to represent individuals in administrative proceedings before the IRS, it does not entitle him to represent others in any court of law or in any non-U.S. forum.[102]  Because Castro  provides tax advice and prepares tax returns, Castro alleges that he is thus engaged in the practice of tax law.[103] Castro then makes the illogical and unfounded assertion that, because Castro "practice[s] tax law," Defendants' alleged statements that Castro is "not an attorney" is false.[104]

---

[95] *Palestine Herald–Press Co. v. Zimmer*, 257 S.W.3d 504, 511 (Tex.App.—Tyler 2008, pet. denied).

[96] *Id.* (citing *Bentley v. Bunton*, 94 S.W.3d at 580).

[97] *See* Tex. Civ. Prac. & Rem. Code § 73.005.

[98] *See* Complaint ¶¶ 15, 16.  Although the Complaint alleges that Defendants "intimated that Plaintiff Castro is a fraud, has no legal ability to be filing tax returns, and is engaged in unethical and illegal activity," the only alleged statements from which such an "intimation" can be deduced are that Castro was holding himself out to be an attorney while not actually being licensed to practice law.  *See* Complaint ¶¶ 17, 26.

[99] Complaint ¶ 11.

[100] Plaintiff's Original Complaint ¶¶ 11, 12, 14.

[101] Complaint ¶ 11 (emphasis added).

[102]  *See* Internal Revenue Service, "Enrolled Agent Information," *available at* https://www.irs.gov/tax-professionals/enrolled-agents/enrolled-agent-information (last visited June 11, 2018).

[103] Complaint ¶¶ 11, 13.  *See also* Complaint p. 4, n. 2 (asserting that "the practice of tax is the practice of law").

[104] Complaint ¶¶ 11, 12, 15 (referring to Defendants' alleged email statement that Castro is "not a lawyer" as "a libelous email containing defamatory attacks").

The Complaint alleges that "the practice of tax is the practice of law."[105]  Interestingly, the case which the Complaint cites in support of this position—*Sperry v. Florida*, 373 U.S. 379 (1963)—does not reference the practice of tax at all; rather, the case involves a dispute regarding whether a nonlawyer registered to practice before the U.S. Patent Office can prepare and prosecute patent applications for others, where such activity constitutes the "practice of law" under applicable state law.  In Texas, Section 81.101(a) of the Texas Government Code defines the "practice of law" to mean:

> the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

Nowhere in Section 81.101 are providing tax advice or preparing tax returns included in the definition of the "practice of law."  Furthermore, Section 81.102 of the Texas Government Code prohibits a person from "practicing law" unless such person is a member of the state bar (although the state supreme court has the reserved power to provide for the limited practice of law by attorneys licensed in another jurisdiction and law students).  Accordingly, Castro either must agree that dispensing tax advice is not the practice of law, or he must knowingly be engaged in the unlicensed practice of law if he conducts his business in Texas.  Finally, Section 38.122 of the Texas Penal Code also makes it a crime for a person to hold himself out to be a lawyer unless he is licensed to practice law if it is done with an intent to obtain an economic benefit.  Thus, by Castro contending in the Complaint that Defendants' alleged statement that he is "not a lawyer" is false, Castro (who is not a member of the Texas bar) is accordingly holding himself out in Texas to be a lawyer—which is a crime.

A letter from the Florida Bar Association to Castro dated July 18, 2016, confirms that Defendants' alleged statements that Castro is "not a lawyer" and is "not licensed to practice law" are, in fact, true.[106]  According to that letter, issued by Bar Counsel with the Unlicensed Practice

---

[105] Complaint p. 4, n. 2.

[106] App. ¶¶ 4-5.

of Law Department of the Florida Bar, the Florida Bar informed Castro that his argument that he can hold himself out as an attorney because he is authorized to practice before the IRS and because he graduated from law school was completely erroneous.[107]  Bar Counsel reminded Castro that he admitted that his tax business does not require him to be an attorney, therefore there was no reason for Castro to hold himself out as such.[108]  Bar Counsel admonished Castro to remove all reference to being an attorney from his advertisements, websites, letterhead, business cards, and the like.[109] Such admonitions apparently went unheeded, as the Florida Bar sent a letter dated October 21, 2016, to the IRS's Office of Professional Responsibility ("**OPR**"), indicating that Castro continued to hold himself out as an attorney and that such conduct may be a violation of one or more standards from the OPR's Circular 230.[110]  These letters also demonstrate that Plaintiffs, even if provided the opportunity to amend the Complaint, would nevertheless be unable to establish the third element of a defamation claim, i.e. that Defendants were negligent regarding the truth of the allegedly defamatory statements.[111]

Castro also alleges that Defendants made additional defamatory statements by purportedly making comments that "there is 'potential adverse impact' if anyone relies on [Castro's] legal advice" and that "any opinion [Castro] may give on any matter of tax law must take [the fact that Castro is not licensed to practice law] into consideration."[112]  However, statements of "potential" impact and what should or should not be considered in making a decision are not objectively verifiable facts.  Rather, such are inactionable expressions of opinion protected by the First Amendment of the United States Constitution and by article I, section 8 of the Texas Constitution.[113]

---

[107] App. ¶ 4.

[108] *Id.*

[109] App. ¶ 5.

[110] App. ¶¶ 6-17.

[111] *See* WFAA–TV, 978 S.W.2d at 571 (setting forth the elements of a defamation claim in Texas).

[112] Complaint ¶¶ 15, 16.

[113] *Accord Fawcett v. Rogers*, 492 S.W.3d 18, 29 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding that, where accused stated that insurance company should be warned that Plaintiffs *might* have committed insurance fraud, no reasonable person could determine statement regarding possibility was defamatory).

---

Castro's remaining defamation allegations provide conclusory statements and fail to plead sufficient factual content to allow the court to draw the reasonable inference that Defendants are liable for the alleged misconduct.[114]  Specifically, Castro claims that "Defendants have published and disseminated statements of fact when they have spoken to media outlets, spoken at conferences, and authored emails… [which] have *intimated* that Castro is a fraud, [etc.]."[115]  The Complaint does not provide any factual details regarding the actual statements which Defendants are accused of having made, from which Castro is able to conclusively "intimate" the various alleged accusations against him.  With no more than Castro's conclusory statements, Castro's defamation claim does not rise above the speculative level.  The Complaint also provides no facts regarding the dates or locations of these alleged communications, which Defendant is alleged to have made which purported statement(s), and to whom these statements were allegedly communicated by one or more Defendant.  These "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient to defeat a motion to dismiss pursuant to Rule 12(b)(6).[116]

### 3.   Castro & Co.'s Claim for Business Disparagement Fails to State a Claim upon Which Relief May Be Granted.

Like Castro's defamation claim, Castro & Co.'s business disparagement claim is supported by a combination of factual allegations which do not constitute defamation under Texas law, and by allegations which completely lack any factual details sufficient to withstand a motion to dismiss under Rule 12(b)(6).  Castro & Co.'s business disparagement claim should therefore be dismissed.

To recover for business disparagement "a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff."[117]   Specific words or statements must be

---

[114] *Iqbal*, 556 U.S. at 678.

[115] Complaint ¶ 26; *accord* Complaint ¶¶ 17, 27.

[116] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557.)

[117] *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)).

identified in order to determine whether they are disparaging or false."[118]   General damages in defamation cases "are non-economic damages such as for loss of reputation" while special damages "are economic damages such as for lost income."[119]   Damages for noneconomic injury such as injury to reputation are not available to a plaintiff asserting business disparagement.[120]

Here, Castro & Co. makes no allegations that one or more Defendant published false and disparaging information about it.   Rather, every single alleged statement made by Defendants related only to Castro and his status as a non-attorney.   The specific words said or statements made by Defendants to "media outlets" and at "conferences" are not identified in the Complaint, therefore their truth or falsity and disparaging nature cannot be assessed by Defendants or this Court.   Furthermore, Castro & Co. makes no more than the conclusory allegation that Defendants acted with negligence when making these alleged publications[121].   Although the Complaint claims that Defendants "engaged in malicious targeted email campaigns," Castro & Co.  admits that these emails were sent anonymously, and provides no information regarding how these emails can be attributed to one or more Defendant, when the emails were allegedly sent and to whom, or what specifically was stated in such emails.[122]   Finally, Castro & Co. does not provide any factual allegations regarding any special damages it allegedly incurred as a result of Defendants' alleged publications.   Rather, Castro & Co. makes the bare assertion that it suffered "lost profits [and] loss of its reputation and goodwill… in the amount of $1,000,000.00" but never indicates that any specific client or known prospective client ceased, reduced, or otherwise limited its business with Castro & Co. as a result of Defendants' alleged statements (again, none of which were actually about Castro & Co.).

---

[118] *Granada Biosciences, Inc. v. Barrett*, 958 S.W.2d 215, 222 (Tex. App.—Amarillo 1997, pet. denied), judgment modified on reh'g (Oct. 21, 1997).

[119] *Hancock v. Variyam*, 400 S.W.3d at 65.

[120] *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d at 155–56 (noting that business disparagement "only seeks to protect the plaintiff's economic interests").

[121] *See* Complaint ¶ 28 (stating that "Defendants knew *or should have known* this information was false when such information was disseminated…") (emphasis added).

[122] Complaint ¶ 29.

Because the Complaint fails to state a claim for business disparagement, this claim should be dismissed pursuant to Rule 12(b)(6).

### IV.    CONCLUSION

The Complaint should be dismissed in its entirety for a multitude of reasons.  Plaintiffs' claims against Defendants should be dismissed because Plaintiffs have not established that this Court has subject matter jurisdiction or personal jurisdiction over the Defendants, nor that venue is proper in the Northern District of Texas.  Additionally, and/or alternatively, Plaintiffs' claims against Defendants should be dismissed because they are not facially plausible and are insufficiently plead.

Defendants Roy Andrew Berg, Alexander Fairfax Marino, and Moodys Gartner Tax Law, LLP, respectfully request that Plaintiffs' First Amended Complaint be dismissed with prejudice; that Plaintiffs take nothing against Defendants; that Defendants be awarded their damages and reasonable attorneys' fees and court costs incurred in defending against Plaintiffs' baseless claims; and for any other or further relief in law or equity to which they may be justly entitled.

Respectfully submitted,

*/s/ Andrew T. Turner*
Andrew T. Turner
Texas Bar No. 24008968
andrew.turner@ogletreedeakins.com
Theanna Sedlock
Texas Bar No. 24089243
theanna.sedlock@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  214.987.3800
Facsimile:  214.987.3927

**COUNSEL FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 16, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to counsel of record.

*/s/ Andrew T. Turner*
Andrew T. Turner

35184982.4